Good morning. Your Honors, may it please the Court, Mr. Ahmed, Richard Wall for Appellant Wayne McDuffie. Your Honors, in this matter, I guess I would first like to address the suppression issue and begin with addressing the issue that was raised by the government in response to our brief suggesting that the collective knowledge doctrine could be applied here to basically salvage a deficient arrest warrant. And I would point out that in our reply we cited two cases, a U.S. v. Cox, 475 F. 2nd, 837, the Ninth Circuit case, and a very clearly say you cannot use the collective knowledge doctrine under these circumstances to try to remedy a defective arrest warrant, that the officer who makes the arrest has to have knowledge of facts that would support probable cause. Okay. Just for my benefit, it seemed to me that in your opening brief here you suggested that you wanted to suppress the evidence seized at the Walnut Street apartment? Correct. And you don't seek to suppress the evidence seized in the car? No, I'm sorry. All the evidence that was obtained is my understanding. In your opening brief, you don't talk about anything about the car. You only say, blue evidence seized from the Walnut Street apartment. Well, that was the primary evidence on which Mr. McDuffie was convicted. The evidence of the car itself was not a supportive conviction of the charges. So the answer to your question, my question is, no, we're not seeking to suppress the car evidence? We sought, the motion was to suppress all evidence that was a result of the illegal arrest. Well, when I read what you said to the district court, you said the evidence seized from the defendant's apartment at Walnut Street. That was a district court motion to suppress at 16. So again, I said to myself, well, then we're not worried about the baggies of cocaine found in the car or the receipt of the furniture delivery in the defendant's name in the Walnut Street address? Frankly, it wouldn't matter at this point if that was suppressed or not, but I believe that our motion was to suppress all evidence that resulted from the arrest. Well, I guess I didn't see that, but that's fine if that's the way it is. So if you're seeking to do that, then you're suggesting that the affidavit of Mr. Barrington was not sufficient to get that? That's correct. Basically, the affidavit says we went to this apartment. Mr. McDuffie and another person were present in the apartment. We found a small rack of crack cocaine in the back bedroom. Well, I didn't quite say that. It said we went to the apartment. The defendant opened the door when the officers knocked. The defendant said to come inside so the neighbors wouldn't see what was going on. When they got in there, the officers smelled the marijuana, and both the defendant and Armstrong gave permission to search the apartment. If we knocked just to there, you're suggesting that's not probable cause? Clearly it's not probable cause. Why? Because it doesn't tell you anything more than Mr. McDuffie happens to be there at that time. Well, Mr. McDuffie lets them in. He's the one who tells them to come inside. He's the one who says they can search everything, and then they find crack cocaine on the top of the TV. They find after the crack cocaine on the top of the TV, they find the marijuana pipe. They find the cash, and they find the drug scale next to the crack. Explain. None of it has any connection to Mr. McDuffie. What do you mean it doesn't? He's there. He opened the door. He said come in so others wouldn't see what was going on. He tells them he has permission to search. Why is that not probable cause? Well, they obtained permission from both he and Ms. Armstrong. Under Washington law, though, you can't have circumstantial evidence such as that recited by Judge Smith be sufficient to establish probable cause under the Weiss case. No, because you have to show to have ... He wasn't in his physical possession, so you have to have at least ... Dominion and control of the apartment. That's what it is. This is circumstantial evidence. He let them in. You say somebody else did, too, but the reality is that's not what the officer said. They said he let them in. They went there. They found those things. Under that circumstantial evidence, part of what the officers can consider in determining whether there is probable cause. They might be able to ... Well, I would say actually no, but even if they could, it wouldn't get them there. Let me explain why. First of all, it has to be the place where the object is found. The object is clearly stated to be found in the back bedroom. Oh, come on. You've got to be serious. You're suggesting that a warrant has to state with under the rug in the back bedroom in the corner? Well, this is not a search warrant. This is ... No, I understand that, but we're talking about probable cause. I'm talking about the same concept that you would need for a search warrant. The reality is they smelled marijuana. They're in the apartment. They ask if they can search. They find these things there. You're suggesting what? Do they have to say, no, don't lick there. Come over here and check here? No, no, but the fact that he gave consent doesn't establish he has control over that area. But it's circumstantial evidence that he does. But it's not enough to get you to probable cause. Wait, why were they there? Why were they there? They were there to talk to Mr. McDuffie about a murder. That's why Detective Barrington was there. I'm not sure why they ... Oh, the other officers were there to serve a misdemeanor arrest warrant on Mr. McDuffie. Yes. And so they went to that apartment expecting to find Mr. McDuffie there. Doesn't say that in the affidavit. Only that they went there to look for him. It doesn't tell us anything, how long he was there, if he's a renter, if he lives there, if he's been there for only five minutes. But you have to show dominion control over where the object is found. And there's nothing here that indicates he had any dominion control over the back bedroom, which is where this object is found. Tell me how you would distinguish Maryland versus Pringle. There, the officers had probable cause to arrest an occupant where two other persons were also in the vehicle, having access to the drugs. The reasonable officer could conclude, this is the Supreme Court, that there was probable cause to believe that the defendant had committed the crime of possession of cocaine either solely or jointly. Now how do you distinguish your case from that? Because you're talking about an automobile where inside the interior of the automobile and you've got an item that's within reach of the defendant. So potentially within his control. We don't know that Mr. McDuffie was in the back bedroom. We don't know if the back bedroom was locked or they had to do something to access it. We do know that the crack cocaine was on the bedroom on the top of the TV. We do know that the scales were on the top of the TV. It isn't as if somebody who was there who was mere visitor wouldn't know by walking around they were there. It isn't as if they were hidden. It isn't as if they were tried to keep away from him. We don't know if he was ever in the back bedroom. We don't know that. That's your total idea. Well, just logically. The law is very clear. When more than one person occupy a residence or in a residence, certain places can be under the control of only one person, particularly bedrooms. And if it's under control of one person and not another, the person who doesn't control that bedroom cannot give legal consent. And this is where the government's argument is backwards. Even with Mr. McDuffie, even if he specifically gave consent to go into the back bedroom, if that back bedroom was Brenda Armstrong's back bedroom and the officers didn't have other facts to tell them that he had authority and control over that back bedroom, his consent would be invalid. You have to establish apparent or actual authority to give consent to search that place. There's no facts in this affidavit to establish that. You have not answered Judge Smith's questions, though, about the Maryland v. Pringle. Doesn't that destroy your argument? No. No, it does not. Because it's an automobile. It's an automobile that's very different from a house where you have the ability of one person to control a particular area of the house or a bedroom, which is this case. In fact, bedrooms are often under the control and dominion of only one person and not everyone who happens to be in the residence. And that's what we have here. I've got 29 seconds. I just want to briefly address the issue of the government misconduct. And I'll just say this. I believe that this Court, if the facts were turned around and the story that's told here by Detective Barron to explain his fingerprint on this scale were being offered by a defendant or a witness on behalf of the defendant, this Court would have no trouble saying this is a totally unbelievable story and we simply don't accept it. Well, I mean, I appreciate your argument for a jury, maybe, but what is my standard of review for that argument? It's a clear error. Clear error, right. In other words, we've got the District Court down there. They're reviewing the facts. You could make that argument to the District Court. And now, outrageous conduct is something a District Court deals with every day. Up here, I've got to say it's a total abuse. There's no facts to even consider. That can't be. Well, it is here, Your Honor, with all due respect. I don't find the facts. Well, the facts are that the government has someone who's an agent of the government has the information that we were never able to obtain. What happened to the original gotcha letter? How that fingerprint actually got on the scale? Why Detective Barrington was the only person who knew or claimed to know there was residue on that scale? None of those facts can be explained by anything other than Detective Barrington. Many of the lawyers who come and argue in front of this court on an abuse of discretion standard do not state the facts in the relevant way most probable for the opposite side. Because the District Court has the chance to look at these facts and put them under a review and make its decision. So in making your argument to me, it isn't enough to argue all the best facts for you. The best idea for you is to say, what is it the District Court relied upon which he shouldn't have relied upon at all? Well, that's the problem. The District Court decided the gotcha letter meant nothing. The fact that they did not explain how Detective Barrington ever came into a copy of it. For example, the government on appeal states that Barrington obtained the gotcha letter in July 2009 just before the federal trial, his federal trial. That's impossible. He could not have obtained it at that time. Jody Dewey didn't have a copy of it. It's not in a computer system anywhere. It's somehow magically appeared. That by itself is enough to tell you Detective Barrington is not telling the truth about what happened. Because his explanation cannot be true, simply cannot be true. And that's also true of how his fingerprint got on the scale. The one gloved hand is simply not a plausible or believable explanation. Do you have other questions, Judge Smith? No. All right. Mr. Ahmed. Good morning, Your Honors. Ani Ahmed for the United States. Your Honors, I will start with the outrageous government conduct part of the defendant's claim. First of all, as the court knows, the defendant received a second trial in this case based on a Brady violation, specifically that the defendant was not informed that Detective Barrington's fingerprint was on the scale. After that, he explored this in depth during trial as to this possible cover-up that Detective Barrington had engaged in. Specifically, I would tell the court that the defendant's assertions simply don't make any sense. As the court knows, Detective Barrington was not the person who actually found the scale in the back bedroom. In fact, it was Officer Rich Meyer and Officer O'Brien that found the scale in the back bedroom. Barrington was called into the back bedroom by Officer Meyer after he had discovered the scale. At least two witnesses, Meyer and Barrington, confirmed that Barrington had touched the scale. That was never disputed. As far as the gotcha report, I don't know what counsel is referring to as far as Detective Barrington claiming that he had gotten this gotcha report in July of 2009. That was not what Detective Barrington testified to. I believe counsel cross-examined him. Actually, it was direct examination. On numerous occasions, Detective Barrington stated that he had seen the gotcha report, but he didn't recall when he had seen the gotcha report. In fact, I believe that as the evidence was fleshed out, it was actually November of 2009 when the defendant's state counsel, Anna Northead, received that gotcha letter from the prosecutor, Mark Zappola, I believe in early November 2009, which was some six months after the defendant's federal trial. Counsel, unless my colleagues have other questions for you, you may want to change your focus. I don't think we're particularly focused right now on this conduct given the second trial in this. Do you have other issues that you want to present to us? Unless the court has questions about the probable cause, I would just state one thing, Your Honor. The Whitley case and the Cox case don't stand for what the defendant's proposition is here. The Whitley case actually was a case where it was a tip and other officers relied on the bulletin based on the tip, and the court said that the tip itself didn't establish probable cause because the officer had not corroborated information supplied by the tip. And the Cox court, actually, it was based on an assertion or a finding that you can't use good faith to bring back an otherwise defective warrant. Is there evidence in the record of why they chose that apartment to go and execute the warrant? Yes, Your Honor. On November 30th, prior to that, Officer Rich Meyer's testimony in the record states that he had seen the gold blazer that Mr. McDuffie drove outside that apartment. And based on that information, he believed he was staying at that apartment. But isn't it also true that the reason that they went to that apartment at all had nothing to do with him, but had to do with the fact that his girlfriend had put together a power subscriber account, such that she was then the owner or the renter of the apartment? She was known to be the girlfriend of Wayne McDuffie, Your Honor, but they actually went there originally because he had a warrant out of, I believe it was out of Seattle or Tacoma. He had a misdemeanor domestic violence, I believe, warrant. And Officer Meyer testified that he was on patrol based on that geographical region, and he was responsible for that region and had learned that Wayne McDuffie had a warrant. And he was familiar with Mr. McDuffie enough to contact individuals in the gang unit. And that's where Detective Barrington became aware of that warrant and decided to participate based on a murder investigation. Are you really focusing in on the Walnut apartment, or are you focusing back on the other apartment at Ash? Ash, Your Honor. I'm talking about Walnut. When they went to Walnut, the only reason they knew there was anything at Walnut was the fact that his girlfriend had rented it and thereafter saw his car, right? No, actually two different officers testified. Alan Edwards testified before the first trial or during the first trial, and Tony Meyer testified during the second trial. They had actually seen his gold blazer parked outside prior to execution or prior to his arrest, and they had seen him come from that residence, in fact. But they knew that Brenda Armstrong had a relationship with him. That was their starting point. But they had actually observed him coming from that apartment before they arrested him. Well, and in fact, he then drove away, and they arrested him based on the warrant right after he drove. That is correct, Your Honor. Unless the court has any further questions, I'll sit down. Are you making a lot of points about good faith here? Your Honor, I was my worry about your good faith is I couldn't find it in your brief any place. Your Honor, originally the good faith argument was submitted based on the fact of the Gonzales case. After the Gonzales case, the court had said that we had operated prior to Gonzales. We didn't really argue that in the brief, did you? No, Your Honor, I didn't. All right. No further questions. Thank you all. Thank you both for your argument. The case just argued is submitted.
judges: Walter, Smith, Smith